**CLIFTON et al. v. PUENTE et al.**

**No. 11891.**

Court of Civil Appeals of Texas. San Antonio.

Dec. 1, 1948.

Rehearing Denied Jan. 5, 1949.

Morriss, Morriss & Boatwright and Trueheart, McMillan & Russell, all of San Antonio, for appellants.

Carlos C. Cadena, J. M. Woods and Alonso S. Perales, all of San Antonio, for appellees.

NORVELL, Justice.

I. N. Clifton and Southwestern Acreage Company, a corporation, have appealed from a judgment in trespass to try title rendered in favor of appellee Abdon Salazar Puente upon his cross-action.

The property involved is the east two and one-half acres of Tract No. 348, Block 36, in Mayfield Park Addition, Bexar County, Texas, and Southwestern Acreage Company is the common source of title.

Puente's claim is based upon the following written instruments which were set out in the trial court's findings of fact:

(1) Deed dated February 15, 1937, from Southwestern Acreage Company to Albert F. Ward.

(2) Deed dated April 10, 1945, from Albert F. Ward to I. N. Clifton.

(3) Deed dated March 28, 1947, from Clifton and wife to P. J. Humphreys.

(4) Deed dated December 4, 1947, from P. J. Humphreys to Abdon Salazar Puente.

I. N. Clifton's claim is based upon two deeds from Southwestern Acreage Company, one dated December 2, 1947, and the other dated December 16, 1947.

It is readily apparent that Puente's title, emanating from the common source at a date prior in time to that asserted by Clifton should prevail, unless there be some special provision in the conveyances mentioned which would defeat said title. Appellants claim that there is a provision of this nature. The deed from Southwestern

Acreage Company to Ward, which is a part of Puente's chain of title, contains numerous restrictive covenants, one of which prohibits the sale or lease of the property to "persons of Mexican descent."

This deed contains the following forfeiture provision:

"These conditions and restrictions are covenants written with the express understanding that in the event of any violation thereof all title to the then owner and occupant shall be forfeited to the grantor, and upon demand, such property and all improvements thereon shall be surrendered to the seller. All covenants and agreements herein contained shall extend and inure to and be obligatory upon the heirs, administrators, successors and assigns of the parties hereto."

Puente is a naturalized American citizen. He was born in the Republic of Mexico of parents who were Mexican Nationals, and is admittedly a person of "Mexican descent." It is therefore apparent that if effect be given to the literal wording of the racial restrictive covenant and the forfeiture clause, title would revert to Southwestern Acreage Company by reason of Humphreys' sale to Puente.

The trial court upon authority of the recent decision of the Supreme Court of the United States in the cases of Shelley v. Kraemer and McGhee v. Sipes, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. ——, held in effect that the refusal of Puente's demand for judgment would amount to an enforcement by a state court of the racial restrictive covenant and the forfeiture clause above set out; that this would constitute "state action" and thus violate the clause in the Fourteenth Amendment to the Constitution of the United States which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

In order to make appellants' position clear it is necessary to state the pleadings and the facts relating to physical possession of the property in some detail.

Appellants' first amended original petition (the trial petition) contained four counts, designated as "First Count," "Second Alternative Count," "Third Alternative Count" and "Fourth Alternative Count."

The first or primary count was in statutory trespass to try title.

In the second count the pertinent restrictive clause and the forfeiture provisions contained in the deed from Southwestern Acreage Company to Ward were expressly pleaded and a judgment prayed for "by reason of the violation of such conditions and by reason of such forfeiture of title."

In the third count, appellants sought enforcement of the restrictive covenant by means of injunction.

By the fourth count, appellants sought a cancellation of the deed from Humphreys to Puente.

After the Supreme Court of the United States decided the cases above mentioned, appellants, evidently recognizing that the holdings stated in the opinion barred a recovery upon certain counts of their petition, "took a nonsuit on the first count, the second count and the third count of their first amended original petition" and the court found against appellants "on their remaining alternative fourth count of said petition (in which a cancellation was sought), and further found in favor of Abdon Salazar Puente on his cross-action for the title to and possession of the land involved."

Appellants make no complaint of the action of the trial court in refusing their prayer for cancellation, but seek to draw a distinction between a case in which a plaintiff seeks to enforce a racial covenant as the basis of a claim for relief and one in which a defendant seeks to enforce such a covenant as a defense to a claim for relief. In other words, appellants, while admitting that the holdings of Shelley v. Kraemer and McGhee v. Sipes, supra, preclude their relying upon the covenant as a basis for judgment in their favor, contend that such holdings do not preclude them from relying upon the covenant as a defense to Puente's cross-action.

In this connection, it is asserted that Clifton is in possession of the premises. The record discloses that on December 2, 1947, Southwestern Acreage Company anti-

cipated the action of Humphreys in conveying the land to Puente, and executed a deed to Clifton. The conveyance to Puente was dated December 4, 1947. On December 7, 1947, Clifton erected a fence across the property. This suit was filed on December 8, 1947, and a temporary restraining order issued protecting Clifton's possession. On December 16, 1947, Clifton received a second deed from Southwestern Acreage Company. A temporary injunction was issued on December 17, 1947, which provided that pending a hearing on the merits "the temporary restraining order granted on December 8, 1947 * * * be and is hereby continued in full force and effect, and that the plaintiffs and defendant be and *is* (sic) hereby restrained and enjoined pending further order of court from taking possession or moving into possession of" the property involved. This temporary injunction was dissolved by the final decree.

The nature and extent of Clifton's "possession" is not entirely clear. The temporary injunction is subject to the construction that both parties were ordered not to take possession until after the suit had been terminated. It also is inferable that such possession as Clifton had was maintained and protected by state court action in the form of injunctive orders.

However that may be, we do not regard the question of possession as being controlling and may for the purposes of argument consider that Clifton had and maintained possession from and after December 7, 1947. The circumstances detailed, however, illustrate the narrow position taken by appellants. Without affirmative enforcement of the racial covenant involved, it would seem that the scheme of restriction applicable to the subdivision of which the property here involved is a part can not be effectively realized, should voluntary methods fail.

Appellant Clifton bases his claim of title upon the unusual fact circumstance that he was able to secure physical possession of the premises prior to the time Humphreys was able to effect a transfer of possession to his grantee, Puente. As an ordi-

nary or usual matter, the grantor and the grantee in a deed would have knowledge of the sale and be able to effect a transfer of possession before the holder of the reversion could know of the transaction and seek to assert his rights by seizing possession of the property. To recognize appellants' contention would be to encourage disorderly practices by placing an undue emphasis upon the seizure of possession, and would serve no effective purpose in preserving the original scheme of restriction applicable to the subdivision.

 In the absence of the exhibition of a chain of title from the sovereignty of the soil or from a common source, the element of possession may be controlling. But here both Clifton and Puente claim under a common source by different chains of title. A comparison of titles is therefore involved. Puente's title is the better title and he is entitled to judgment unless by judicial action the restrictive racial covenant and the forfeiture clause dependent thereon be recognized and enforced so as to deny Puente's claim to title. It is as much an enforcement of the covenant to deny to a person a legal right to which he would be entitled except for the covenant as it would be to expressly command by judicial order that the terms of the covenant be recognized and carried out. No valid distinction can be predicated upon the position of a party (alleged to be an ineligible grantee) as a plaintiff or as a defendant. Under the decision of the Supreme Court, above referred to, judicial recognition or enforcement of the racial covenant involved here by a state court is precluded by the "equal protection of the laws" clause of the Fourteenth Amendment.

It is suggested that certain of the conclusions of law made by the trial court go beyond the holdings of the United States Supreme Court in the cases cited. A discussion of these matters is obviously not necessary to a decision of this appeal, as the trial court's judgment must be affirmed on authority of Shelley v. Kraemer—McGhee v. Sipes, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. ——, and it is accordingly so ordered.

Judgment affirmed.