**D.W.H., a minor, through Lorena MITCHELL, her duly appointed guardian ad litem, Appellant (C9–92–1251), Respondent (C8–92–1306),**

v.

**Sadie STEELE, et al., Defendants,**

**D.H., a minor, Appellant (C8–92–1306),**

and

**Minnesota Joint Underwriting Association, Intervenor, Respondent.**

Nos. C9–92–1251, C8–92–1306.

Court of Appeals of Minnesota.

Jan. 12, 1993.

Review Granted March 22, 1993.

Meaghan E. Harper, Harper and Harper Chartered, Eagan, for appellant (C9–92–1251), respondent (C8–92–1306).

Charles J. Lloyd, Legal Advice Clinics, Ltd., Minneapolis, for appellant (C8–92–1306).

Jeanne H. Unger, Martha M. Simonett, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and PETERSON and FLEMING, JJ.

## OPINION

FLEMING, Judge.[*]

Appellants D.W.H. and D.H. appeal from summary judgment in a declaratory action to determine coverage under a foster parent liability insurance policy. D.W.H. sued Sadie Steele, a foster care provider, and D.H., a foster child at Steele's home, for sexual abuse while D.W.H. was a foster child at Steele's home. Minnesota Joint Underwriting Association (MJUA), Steele's liability insurance provider, claimed it had no duty to indemnify or defend either Steele or D.H. against D.W.H.'s claims. The district court granted MJUA summary judgment, holding public policy requires that MJUA's liability policy exclude coverage for intentional acts.

## FACTS

Sadie Steele was a licensed foster care provider in Hennepin County during 1987 and 1988. Appellant D.W.H. was three years old when placed in Steele's foster home in June 1987. Appellant D.H. was placed in Steele's foster home in August 1987 at the age of 11. It is undisputed that D.H. sexually abused D.W.H. while the two were in Steele's foster home.[1] In 1989, D.W.H. sued D.H. for intentional sexual abuse, and she sued Steele for (a) negligent supervision; (b) violation of Minn.Stat. § 626.556 (1988) (failure to report known maltreatment of minors); and (c) intentional sexual and physical abuse.

Steele and D.H. tendered defense of D.W.H.'s action to MJUA, which insured Steele under a foster parents liability policy.[2] MJUA rejected part of the tender, arguing it had no duty to defend or indemnify either Steele or D.H. against D.W.H.'s intentional sexual abuse because such conduct is excluded under its policy. MJUA is defending Steele against D.W.H.'s claim of negligent supervision.

In July 1991, MJUA moved to intervene in D.W.H.'s action against D.H. and Steele. D.H. then sought a declaration that pursuant to Minn.Stat. § 245.814 (1988), MJUA was obligated to defend and indemnify D.H. against D.W.H.'s claims. Following cross-motions for summary judgment, the district court granted MJUA summary judgment, holding section 245.814 does not require that MJUA provide coverage for intentional or criminal acts advanced against D.H. and Steele. Judgment was entered, and D.W.H. and D.H. appealed. The cases were consolidated for appeal.

## ISSUE

Does Minn.Stat. § 245.814 (1988) mandate the Minnesota Commissioner of Human Services to provide liability insurance coverage for D.H.'s and Sadie Steele's intentional sexual abuse of D.W.H.?

## ANALYSIS

On appeal from a summary judgment, this court must determine (1) whether there

---

[*] Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

1. In a Dakota County criminal prosecution, D.H. admitted assaulting D.W.H. and entered a guilty plea to one count of criminal sexual conduct.

2. In 1977, in response to a need for more foster care providers, the Minnesota legislature enacted Minn.Stat. § 245.814. The MJUA was created in 1986 to provide insurance coverage to any person or entity unable to obtain insurance through ordinary methods if the insurance is required by statute. See Minn.Stat. § 62I.02 (1986).

are any genuine issues of material fact; and (2) whether the trial court erred in its application of the law. *State v. French,* 460 N.W.2d 2, 4 (Minn.1990). This court is not bound by the district court's conclusion on a question of statutory construction. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

■ D.W.H. argues that MJUA's foster child liability policy conflicts with Minn. Stat. § 245.814 and therefore, the statutory provisions must substitute for the insurance policy provisions. It is well established law that when an insurance policy provision conflicts with a statute, the policy must be amended to conform with the statute. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 275 (Minn.1985). We conclude, however, that section 245.814 does not conflict with the insurance policy, that the legislature did not intend to provide coverage for intentional and criminal conduct, and that therefore, the district court properly granted MJUA summary judgment denying D.H. and Steele insurance coverage for their intentional and criminal acts.

The Minnesota legislature has determined the state must provide liability coverage to licensed foster homes. Minn.Stat. § 245.814, subd. 1 provides:

**Insurance for foster home providers.** The commissioner of human services shall within the appropriation provided purchase and provide insurance to individuals licensed as foster home providers to cover their liability for:

(1) injuries or property damage caused or sustained by persons in foster care in their home; and

(2) actions arising out of alienation of affections sustained by the natural parents of a foster child or natural parents or children of a foster adult.

MJUA's insurance policy excludes coverage for the following: (1) any loss arising out of a "criminal act;" (2) any personal injury arising out of the "willful violation of a penal statute;" and (3) bodily injury arising out of or resulting from the "actual, alleged or threatened sexual molestation of a minor by * * * any insured." It is not contested that Steele's and D.H.'s conduct fell within these intentional and criminal act exclusions. Our inquiry is whether the policy exclusions conflict with the legislative mandate expressed in section 245.814.

In essence, appellants argue the only necessary condition to invoke coverage under section 245.814 is that injuries are "caused or sustained" by a foster child in foster care. This construction of the statute would make the question of how the injuries were caused irrelevant. It follows, according to appellants' logic, that section 245.814 would require coverage for all injuries to foster children, even those resulting from intentional and criminal acts, so long as the injuries were sustained by the child while in foster care. Under this interpretation, the criminal and intentional act exclusions in MJUA's policy conflict with section 245.814 and insurance policy should be amended as a matter of law to conform with the statute. We disagree.

■ Appellants' contention that section 245.814 requires an amendment of the MJUA exclusion provisions ignores Minn. Stat. § 621.06 (1988). Minn.Stat. § 621.06 requires that MJUA's insurance coverage policies contain the "usual and customary provisions of similar insurance policies issued by private insurance companies." The criminal act exclusions included in the MJUA policy issued to Steele are such standard provisions. In construing a statute, this court has the duty to give effect to all related statutory provisions if possible. *Roinestad v. McCarthy,* 249 Minn. 396, 405, 82 N.W.2d 697, 703 (1957). Accordingly, MJUA is not precluded from excluding coverage for criminal acts; it is, in fact, mandated by the legislature to include such policy exclusions.

■ Further, statutes are to be construed, whenever possible, to avoid irreconcilable differences and conflict with other statutes. *Erickson v. Sunset Memorial Park Assoc.,* 259 Minn. 532, 543, 108 N.W.2d 434, 441 (1961). Section 245.814, which requires the Commissioner of Human Services to provide coverage to foster

care providers, can be harmonized with section 621.06, which requires the MJUA to include criminal act exclusions. The logical and reasonable construction of section 245.-814 is that the legislature did not intend to provide liability insurance coverage to foster home providers for claims involving criminal acts. Such a construction reconciles the conflict inherent in appellants' proposed construction and therefore, their position fails.

We note, however, even if appellant's proposed construction of section 245.814 were embraced, the rules to resolve irreconcilable statutes, *see* Minn.Stat. § 645.26 (1990), buttresses MJUA's, not appellants', position. When two laws passed at different legislative sessions are irreconcilable, the more recently enacted law prevails. Minn.Stat. § 645.26, subd. 4. Because section 245.814 was enacted in 1977 and section 621.06 was enacted in 1986, section 621.06 governs. Moreover, when a general provision is in apparent conflict with a specific provision in the same or similar law, the specific provision controls. Here, section 245.814 mandates liability coverage for foster care providers. But section 621.06 specifically addresses the insurance provision requirements for an MJUA policy to foster care providers. Consequently, section 621.06 controls.

We also echo the district court's concern with Minnesota's long-standing public policy that homeowner insurance policies do not provide coverage for criminal conduct. *See Estate of Lehmann v. Metzger*, 355 N.W.2d 425, 426 (Minn.1984) (claim that uncle sexually abused his niece not covered by homeowner's policy); *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834, 835 (Minn. 1982) (insurance coverage denied to foster parent who sexually abused foster child). We recognize that construing a homeowner's policy is fundamentally different from judicially construing a statute. Nonetheless, given that Minnesota appellate courts have consistently held homeowners insurance policies do not provide coverage for sexual abuse or intentional acts, we interpret the legislature's failure to amend section 245.814 since its adoption in 1977 as an implicit adoption of the public policy

precluding coverage for intentional and criminal acts. *See Erickson*, 259 Minn. at 543, 108 N.W.2d at 441 (the general terms of a statute are subject to implied exceptions founded on rules of public policy and maxims of natural justice). For these reasons, we hold that section 245.814 does not require the Commissioner of Human Services to purchase and to provide liability insurance for foster home providers that covers an insured's criminal or intentional acts.

## DECISION

The district court properly granted MJUA summary judgment.

Affirmed.