### AMERICAN FAMILY INSURANCE GROUP, petitioner, Appellant,

v.

### Harold L. SCHROEDL, Respondent.

### No. C7–99–428.

Supreme Court of Minnesota.

Aug. 24, 2000.

**276**

Rider, Bennett, Egan & Arundel, LLP, Eric J. Magnuson, Jeanne H. Unger, Minneapolis, for appellant.

Blomquist & Espeset, Robert V. Espeset, Barry L. Blomquist, Minneapolis, for respondent.

Lommen, Nelson, Cole & Stageberg, P.A., Kay Nord Hunt, Minneapolis, amicus curiae for The Insurance Federation of Minnesota.

## OPINION

PAGE, Justice.

Respondent, Harold Schroedl, suffered a severe closed-head injury when he was hit by a car on December 6, 1997. Because of the accident, Schroedl was incapacitated and resided in a nursing home until he died in December 1998. Although Schroedl was retired at the time of the accident, he owned income-producing rental property that he managed and maintained. Because he was incapacitated after the accident, he was no longer able to maintain the rental property. As a result, Schroedl's son and others were hired and paid to maintain the property. At the time of his injuries, Schroedl had an automobile insurance policy with appellant, American Family Insurance Group. Schroedl filed a no-fault insurance claim with American Family for "replacement services" or, in the alternative, a claim for wage loss to recover the amount expended hiring his son and others to maintain the rental property. American Family denied Schroedl's claim, contending that when Schroedl purchased the no-fault insurance policy from American Family, he elected to exclude coverage for "work loss" and that the exclusion was still in effect on December 6, 1997.

After American Family's denial of the claim, the matter proceeded to arbitration. The arbitrator ruled that Schroedl was entitled to recover income loss benefits and that those benefits were not barred by his insurance policy's "work loss" exclusion. In addition, the arbitrator noted that American Family had not complied with its responsibility under Minn.Stat. § 65B.491 to inquire about Schroedl's need for wage loss reimbursement coverage. American Family appealed to the district court, which vacated the arbitrator's award based on its finding that Schroedl's policy with American Family specifically excluded "work loss" benefits from coverage. Schroedl appealed and the court of appeals reversed, holding that American Family had an ongoing statutory duty to inquire whether Schroedl needed wage loss reimbursement coverage and, having failed to make such inquiry, was precluded from denying coverage.

In 1992, at the age of 72, Schroedl purchased the initial policy from American Family. Consistent with the no-fault insurance scheme, the policy provided mandatory benefits for basic economic loss as required by Minn.Stat. § 65B.49. Basic economic loss benefits encompass income loss benefits including "costs incurred by a self-employed person to hire substitute employees to perform tasks which are necessary to maintain" income. Minn.Stat. § 65B.44, subd. 3 (1998). Income includes wages, see Minn.Stat. § 65B.43, subd. 6 (1998), and loss means "economic detriment resulting from the accident" and includes losses resulting from replacement services. Minn.Stat. § 65B.43, subd. 7 (1998).

Minnesota Statutes § 65B.491 provides an exception to the mandatory basic economic loss benefits required by section 65B.49. Section 65B.491 provides that:

> [N]o plan of reparation security issued to or renewed with a person who has attained the age of 65 years may provide coverage for wage loss reimbursement that the insured will not reasonably be expected to be able to receive. It is the responsibility of the person issuing or

renewing the plan to inquire as to the applicability of this section.[1]

*Id.*

In its effort to comply with the provisions of Minn.Stat. § 65B.491, the American Family application Schroedl filled out when he applied for the initial plan contained the following provision:

EXCLUSION OF WORK LOSS UNDER PERSONAL INJURY PROTECTION COVERAGE * * * *

I also acknowledge and agree that I have been given the opportunity to exclude Work Loss Coverage under the Minnesota Personal Injury Protection (PIP) Endorsement and I select to: *(Check Only One Box)*

☐ Keep work loss

☐ Exclude work loss

* * * *

I understand and agree that this acknowledgement of coverage selection or rejection of * * * work loss * * * will apply until I subsequently request a change in writing.

In filling out the application, Schroedl checked the "Exclude work loss" option and did not, during the initial policy period or at any subsequent renewal, request a change in writing.

## I.

This case asks us to resolve three questions. First, we are asked to decide whether it is the insurer or the insured that is required under Minn.Stat. § 65B.491 to make the ultimate decision with respect to the insured's need for wage loss reimbursement coverage. Second, we are asked to decide whether section 65B.491 requires an insurer to inquire as to the insured's need for wage loss reim-

bursement coverage at each renewal of a plan of reparation security after the insured has reached the age of 65. Finally, we are asked to decide whether Schroedl's expenditures for maintenance of his rental property during his incapacity resulting from the automobile accident are recoverable under section 65B.491. Each of these questions requires us to engage in statutory construction. Therefore, our review is de novo. *See Boutin v. LaFleur,* 591 N.W.2d 711, 714 (Minn.1999) (citing *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993)), *cert. denied sub nom. Boutin v. Hvass,* — U.S. ——, 120 S.Ct. 417, 145 L.Ed.2d 326 (1999).

When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. *See Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.* Basic canons of statutory construction instruct that we are to construe words and phrases according to their plain and ordinary meaning. *See Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn. 1980). A statute should be interpreted, whenever possible, to give effect to all of its provisions; "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral,* 598 N.W.2d at 384 (citing *Owens v. Federated Mut. Implement & Hardware Ins.,* 328 N.W.2d 162, 164 (Minn.1983)). We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations. *See Van Asperen v. Darling Olds, Inc.,* 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958); *see also Erickson*

---

1. Minnesota Statutes § 65B.491, in its entirety, reads:

After August 1, 1987, no plan of reparation security issued to or renewed with a person who has attained the age of 65 years may provide coverage for wage loss reimbursement that the insured will not reasonably be expected to be able to receive. It is the responsibility of the person issuing or renewing the plan to inquire as to the applicability of this section. The rate for any plan for which coverage has been excluded or reduced pursuant to this section must be reduced accordingly. This section does apply to self-insurance.

*v. Sunset Mem'l Park Ass'n,* 259 Minn. 532, 543, 108 N.W.2d 434, 441 (1961). Finally, courts should construe a statute to avoid absurd results and unjust consequences. *See Erickson,* 259 Minn. at 543, 108 N.W.2d at 441. When construing a statute, our goal is to ascertain and effectuate the intention of the legislature. *See Amaral,* 598 N.W.2d at 385–86.

■ While statutory construction focuses on the language of the provision at issue, it is sometimes necessary to analyze that provision in the context of surrounding sections. *See Van Asperen,* 254 Minn. at 74, 93 N.W.2d at 698; *Erickson,* 259 Minn. at 543, 108 N.W.2d at 441. This is one of those cases. The operation of Minn.Stat. § 65B.491 only becomes clear when it is read in conjunction with the rest of the No–Fault Act. *See generally* Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–65B.71 (1998). Therefore, we begin our discussion with a brief review of the Minnesota No–Fault Automobile Insurance Act.

■ The Act's purpose is to relieve "the severe economic distress of uncompensated victims of automobile accidents within this state." Minn.Stat. § 65B.42, subd. 1 (1998). To ensure that the Act's purpose is met, an insurer may not provide less coverage than that required by the Act. *See Hertz Corp. v. State Farm Mut. Ins. Co.,* 573 N.W.2d 686, 689–90 (Minn. 1998). The " 'insurer's liability is governed by the contract between the parties *only as long as coverage required by law is not omitted and policy provisions do not contravene* ' " the Act. *Id.* (quoting *Streich v. American Family Mut. Ins. Co.,* 358 N.W.2d 396, 399 (Minn.1984)); *see American Nat'l Property & Cas. Co. v. Loren,* 597 N.W.2d 291, 292 (Minn.1999). The Act mandates, with one limited exception, that basic economic loss benefits be included in every plan of reparation security. *See* Minn.Stat. § 65B.49, subd. 2;[2] Minn.Stat. § 65B.491. Basic economic loss

benefits include income loss benefits. *See* Minn.Stat. § 65B.44, subd. 3. Wage loss reimbursement is a subset of income loss benefits. *See generally* Minn.Stat. § 65B.43, subds. 6–7.

Under limited circumstances, the Act precludes a plan of reparation security from including coverage for wage loss reimbursement. Those circumstances are found in Minn.Stat. § 65B.491, which provides that:

> [*N*]*o plan * * * issued to or renewed with a person* who has attained the age of *65 years may provide coverage for wage loss reimbursement* that the insured will not reasonably be expected to be able to receive. It is the responsibility of the person issuing or renewing the plan to inquire as to the applicability of this section.

*Id.* (emphasis added). The language categorically prohibits an insurer from providing coverage for wage loss reimbursement to an insured who is 65 years of age or older and who will not reasonably be expected to be able to receive "a benefit" from the coverage. *See id.*

■ Of note is the fact that the language of sections 65B.49 and 65B.491 places the burden on the insurer to either include or exclude coverage for wage loss reimbursement, for it is the insurer and only the insurer who provides the plan of reparation security. The language of section 65B.491 does not make reference, either explicitly or implicitly, to the insured being able to elect to keep or reject coverage for wage loss reimbursement. Regardless of whether the insured wants coverage for wage loss reimbursement, the insurer has to comply with both statutes. Pursuant to section 65B.49, subd. 2, all plans of reparation security issued "shall provide" payment for economic loss benefits, including wage loss reimbursement coverage. Therefore, if the insured is reasonably expected to benefit from wage loss

---

**2.** Minnesota Statutes § 65B.49, subd. 2, provides: "Each plan of reparation security shall provide for payment of basic economic loss benefits."

reimbursement coverage, whether the insured wants it or not, the insurer must provide it to comply with the statute. Pursuant to section 65B.491, *"no plan * * * may provide"* coverage for wage loss reimbursement if the insured is 65 years of age or older and will not reasonably be expected to be able to receive a benefit from the coverage. Minn.Stat. § 65B.491 (emphasis added). Therefore, if the insured cannot reasonably be expected to benefit, the insurer cannot write a plan containing that coverage, even if the insured would like to have it. Based on the language the legislature has chosen for the two relevant statutes, we see no other way to reconcile them. Either a plan must include coverage for wage loss reimbursement, or it cannot. There is no provision in the No–Fault Act for the insured to choose. Sections 65B.49, subd. 2, and 65B.491, when read together, do not provide the insured with a waiver or an "opt out" provision. Rather, they instruct the insurer about what must be and what cannot be included in a plan.

▮ Because the substantive impact of section 65B.491, when read together with section 65B.49, subd. 2, is to establish a standard for when the insurer must or must not include wage loss reimbursement coverage in a plan, it follows that it is the insurer who must make the decision required by section 65B.491. It is not sufficient for the insurer to simply inquire as to whether the insured does or does not elect to receive wage loss reimbursement and provide coverage accordingly. The inquiry to be made is whether the insured, who is 65 years of age or older, may personally be expected to be able to receive wage loss reimbursement.

## II.

▮ It appears from Minn.Stat. § 65B.491's language that its purpose is to protect people 65 years of age and older, who no longer earn wages, from being required to pay a premium for insurance coverage for which they have no need and from which they cannot reasonably expect to receive a benefit. Given that purpose, the language of section 65B.491, when read in conjunction with section 65B.49, makes a number of things clear. First, every plan of reparation security must provide income loss benefits, including wage loss reimbursement coverage, except as provided for in section 65B.491. *See* Minn.Stat. § 65B.49, subd. 2; Minn.Stat. § 65B.43, subds. 6–7. Second, insurers are prohibited from providing coverage for wage loss reimbursement to someone who has reached the age of 65 if they will not reasonably be able to receive a benefit from that coverage. *See* Minn.Stat. § 65B.491. Third, the legislature placed the burden on insurers to inquire of their insureds who are 65 years of age or older as to whether the insured will reasonably be expected to receive wage loss reimbursement if injured in an accident. *See id.* Finally, it is also clear that an insurer must make an inquiry when issuing a new plan to anyone who has reached the age of 65 and when renewing the plan of an insured who turned 65 during the previous policy period. *See id.* What is less clear is whether the insurer has the duty to inquire at every renewal subsequent to the first inquiry. We turn now to that issue.

American Family makes a number of arguments to support its contention that the court of appeals erred when it concluded that Minn.Stat. § 65B.491 requires an insurer to inquire as to whether the insured will reasonably be expected to be able to receive wage loss reimbursement benefits at each plan renewal for insureds 65 years of age or older. American Family first contends that the requirements of section 65B.491 are akin to, and should be treated the same as, statutorily mandated offers of optional coverage.[3] American

---

**3.** In *Randall v. State Farm Mut. Auto. Ins. Co.,* 335 N.W.2d 247, 250 (Minn.1983), this court held that mandated offers of optional coverage need only be made once. *See also Hastings v. United Pac. Ins. Co.,* 318 N.W.2d 849,

Family also contends that the plain language of section 65B.491 directs that the duty of inquiry extends only to those insureds 65 and over *who currently have work loss coverage in their policy.* Their argument, as stated in their brief to this court, is:

> The specific inquiry required by the second sentence [of section 65B.491] is an inquiry about applicability of the first sentence: whether the policy provides "coverage for wage loss reimbursement that the insured will not reasonably be expected to be able to receive." Thus, the duty of inquiry under the second sentence is limited to asking those senior insureds who *have* wage loss reimbursement coverage whether they want to decline it – there is no duty to make any inquiry of seniors who have already waived the coverage.

(Appellant's Br. at 16–17.) On that basis, American Family argues that because Schroedl waived coverage when he first purchased his policy in 1992, it had no further duty to inquire about the applicability of section 65B.491.

American Family next argues that use of the disjunctive word "or" in the second sentence of section 65B.491 suggests that only one inquiry need be made, either when a policy is issued to a person 65 and over or when a policy is renewed by a person who turned 65 within the last policy period. American Family contends that the legislature would have used the word "and" if it had intended to create a duty to inquire at every renewal.

■ American Family's arguments are unpersuasive. While American Family asserts that the statutory exception to mandated coverage found in section 65B.491 is similar to mandated offers of optional coverage, it provides no support for that proposition. In fact, they are not similar or akin to each other. The coverage involved in mandated offers of optional coverage is just that, optional. The insured may decide to accept or reject the coverage. Once the decision is made, there is no pressing need to revisit it. That is not the case with mandatory coverage. As discussed above, an insurer may not provide less than the minimum coverage required by the Act. *See Hertz Corp.*, 573 N.W.2d at 688–90. The wage loss reimbursement coverage involved here is mandatory and must be included in every plan of reparation security unless the insured is 65 years of age or older and "will not reasonably be expected to be able to receive" a benefit from it, in which case the plan may not provide it and the insured's premium must be reduced accordingly. Minn.Stat. § 65B.491. The only way for the insurer to comply with the mutually exclusive provisions of section 65B.49, subd. 2, and section 65B.491 is to inquire at the time of each renewal for insureds 65 years of age or older.

The language of section 65B.491 does not turn wage loss reimbursement into optional coverage when the insured turns 65. The second sentence of section 65B.491 requires the insurer to inquire as to the "applicability of this section." Significantly, the statute does not, by its terms, require or authorize an inquiry as to whether the insured desires to retain or omit the coverage, but only an inquiry about the applicability of the section which prohibits coverage for reimbursement that the insured would not reasonably be expected to receive. In other words, the insurer must inquire whether the insured can reasonably be expected to receive the benefits of the coverage. If the answer is yes, coverage remains mandatory; if no, coverage is prohibited. This compels the conclusion that the coverage is not an option for the insured to exercise or waive.

The problem with American Family's argument that the language of the policy states that insurers are only required to inquire of insureds who currently have work loss coverage in their policy is that, as discussed above, section 65B.491 does

851, 853 (Minn.1982); *League Gen. Ins. Co. v.* *Tvedt,* 317 N.W.2d 40, 42–43 (Minn.1982).

not provide a vehicle for the insured to waive coverage for wage loss reimbursement. The concern of section 65B.491 is not whether the insured would select or reject the coverage, but whether an insurer may provide a plan of reparation security containing coverage for wage loss reimbursement to a person 65 years of age or older. American Family's argument is that an insurer need not inquire about the applicability of a statute that prohibits specific coverage if that coverage is not in force. However, because the coverage is mandatory if section 65B.491 is not applicable, *in* applicability of the section is equally important in determining the insurer's obligation. This necessitates inquiry even if coverage is not currently provided.

▪ American Family vigorously argues that the word "or" in the second sentence of section 65B.491 should be read in the disjunctive. We agree that the legislature intended the word "or" in section 65B.491 to be disjunctive.[4] That conclusion, however, does not end our inquiry, nor does it assist American Family's case. American Family's reading of the word "or" would have us ignore the legislature's intent in enacting section 65B.491. That intent is set out in the first sentence of section 65B.491, which states that "no plan of reparation security issued to or renewed * * * may provide coverage for wage loss reimbursement * * *." The legislature used the disjunctive "or" to make clear that two separate acts are prohibited. The first prohibited act is the issuance of a plan of reparation security providing coverage for wage loss reimbursement to a person 65 years of age or older who will not reasonably be expected to be able to receive the wage loss reimbursement. The second prohibited act is the renewal of a plan of reparation security containing coverage for wage loss reimbursement with a person 65 or older who cannot reasonably expect to receive wage loss reimbursement. That interpretation of the word "or" is consistent with the reading we gave to the word "or" in *State v. Rossow*, 310 Minn. 399, 401–02, 247 N.W.2d 398, 400 (1976) (explaining that the disjunctive "or" is used to show that the evidence is admissible on either of two separate grounds). The use of the disjunctive phrase "issuing or renewing" in the second sentence of section 65B.491 parallels the first sentence, requiring the insurer to make the required inquiry whether it is performing the act of issuing or renewing a plan of reparation security.

▪ The section 65B.491 exception to otherwise mandatory coverage under the Act is intended to protect insureds who are 65 years of age or older and no longer earn wages from being required to purchase coverage that cannot reasonably be expected to provide them a benefit. The statute is not intended to eliminate mandatory coverage for which the insured has a need. Therefore, reading section 65B.491

---

4. As for American Family's argument that had the legislature intended to create an ongoing duty to inquire at each renewal, it would have used the word "and;" it can be just as easily argued that had the legislature intended to require insurers to make only one inquiry, it could simply have added a sentence at the end of what is now section 65B.491 stating: "The insurer need only inquire once, either when a plan is issued to a person who is 65 years of age or older or at the first renewal after a person turns 65 years of age." But the legislature did not. Moreover, *"every* use of 'and' or 'or' as a conjunction involves some risk of ambiguity." Maurice B. Kirk, *Legal Drafting: The Ambiguity of "And" and "Or,"* 2 Texas Tech L.Rev. 235, 253 (1971).

Both "and" and "or" are equally ambiguous because both are subject to multiple interpretations, some of which may be the same. For instance, "and" can have a joint or a several meaning while "or," commonly thought to be exclusive, can also be inclusive, depending on the context. In fact, Professor Reed Dickerson noted that "observation of legal usage indicates that the tendency is to use 'or' in the *inclusive* sense." *Id.* at 238 (emphasis added) (citing Reed Dickerson, *The Fundamentals of Legal Drafting,* 77–78, 84 (1965)). In order to ascertain the legislature's intent with respect to the use of the word "or," the word must be considered in context. *See Erickson,* 259 Minn. at 543, 108 N.W.2d at 441 (construing a statute in light of related statutes).

in conjunction with section 65B.49, subd. 2, we conclude that insurers must make the inquiry required under section 65B.491 at every renewal of a plan of reparation security to ensure both that the insureds who are 65 years old or older are being provided all coverage mandated by the Act and that they are not being provided coverage which the insurer is prohibited from selling them.

■ Because American Family's failure to inquire at every renewal violated the No–Fault Act, the statutory exclusion of wage loss reimbursement coverage provided in section 65B.491 cannot be applied to Schroedl's policy and Schroedl is therefore entitled to the full scope of mandatory basic economic loss coverage, including coverage for wage loss reimbursement.[5]

Affirmed.

---

**5.** Because we hold that the statutory exclusion of wage loss reimbursement coverage does not apply here, we need not address the third issue raised by American Family— whether the money expended by Schroedl in hiring his son and others to maintain his rental property constituted wage loss within the meaning of section 65B.491. While we decline to reach this issue, we note with some concern that the American Family plan at issue here, instead of referring to coverage for "wage loss reimbursement," refers to "work loss coverage," a term found nowhere in section 65B.491 or in any of the statutory provisions that describe basic economic loss coverage.