James Malcolm WILLIAMS, Appellant,

v.

The DOW CHEMICAL COMPANY, et al.,
Respondents,

E.E. "Pete" Parranto, et al.,
Defendants,

Q Petroleum Corporation, et al.,
Liberty State Bank, et al.

No. C2–87–1111.

Court of Appeals of Minnesota.

Nov. 3, 1987.

James Malcolm Williams, Minneapolis, pro se.

Michael Berens, James Fitzmaurice, Minneapolis, for The Dow Chemical Company, et al., respondents.

David D. Meyer, Lakefield, for Q Petroleum Corporation, et al., respondents.

Louis W. Brenner, Minneapolis, for Liberty State Bank, et al., respondents.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

James Malcolm Williams, who represented E.E. "Pete" Parranto and the E.E. "Pete" Parranto Companies, Inc. (the Parranto defendants), in a federal lawsuit against the Dow Chemical Company, Inc., brought this suit against the parties to that litigation, their lawyers, and the recipients of the proceeds of that litigation to recover his attorney's fees under theories of attorney's lien, express or implied contract, and fraud. He appeals the entry of partial summary judgment in favor of all defendants except the Parranto defendants and Val Parranto Davis. We affirm as to all defendants except Dow, and reverse and remand for further proceedings against Dow.

## FACTS

In 1979, Q Petroleum Corporation and the Parranto defendants formed a joint venture to purchase a petroleum refinery from Dow. They borrowed the $250,000 downpayment on the refinery from Liberty State Bank (Liberty). When the deal fell through, Dow refused to return the downpayment, and the loan went into default. Liberty brought an action in Ramsey County against Q Petroleum on the note, and Q Petroleum brought the Parranto defendants in as third parties to that suit.

While the Liberty lawsuit was pending, Q Petroleum and the Parranto defendants brought a federal court action against Dow, seeking the return of the downpayment. With both actions pending, Q Petroleum and the Parranto defendants entered into an agreement specifying their respective obligations on the Liberty loan and agreeing to a division of any proceeds from the Dow litigation. In addition, under an amendment to that agreement the Parranto defendants undertook to pursue the claims of both parties against Dow, with Q Petroleum not obligated to pay any of the legal expenses.

In February 1982 the Liberty lawsuit was settled pursuant to an agreement in which Q Petroleum and Parranto signed new promissory notes and gave Liberty a security interest in the proceeds of the Dow litigation. In March 1982 Liberty perfected its security interests in the proceeds by filing financing statements with the Secretary of State.

According to Williams, he first became involved with the Dow litigation in late 1983, when Parranto asked him to try the lawsuit. In March 1984 Williams filed in federal court a "Notice of Association of Attorneys" signed by himself and Val Parranto Davis, Parranto's daughter and attorney. The notice stated that Williams had become associated with Davis' firm as attorney for the Parranto defendants. Williams' compensation was specified in a retainer agreement dated June 28, 1984, which stated that Williams had been retained to investigate and pursue the Parranto defendants' claims against Dow and Q Petroleum. The agreement provided for additional compensation for Williams in the event that Q Petroleum also agreed to pay attorney's fees. Williams has produced no evidence that Q Petroleum expressly made such an agreement.

The Dow case was tried in July 1984. On August 27, 1984, the federal district court entered judgment for Q Petroleum and Parranto in the amount of the downpayment, plus interest. After entry of judgment, Williams contacted the other lawyers involved in the case to find out whether Dow intended to pay the judgment or appeal. In September 1984, Berens, the attorney for Dow, informed Rosen, the attorney for Q Petroleum, that Dow was prepared to pay the judgment, exclusive of interest and costs. Rosen advised Davis, Parranto's other attorney, of that offer. The parties dispute whether Williams received notice.

On September 26, 1984, Lucinda Jesson, another of Dow's attorneys, sent Q Petroleum attorney Rosen a check in the amount of $462,790.93 in satisfaction of the judgment against Dow. The payees were named on the check exactly as they had been in the order for judgment: Q Petroleum Corporation, E.E. "Pete" Parranto Companies Inc., & E.E. "Pete" Parranto,

Individually and as Joint Venturers. The parties dispute whether Williams received a copy of the check. On September 27, 1984, Williams filed in federal court a "Notice of Attorney's Lien on Judgment Entered on August 27, 1984." Rosen received a hand-delivered copy of that letter on September 28, 1987. There is no evidence that Liberty received any notice of the lien.

On October 1, 1984, Val Parranto Davis, Pete Parranto, Q Petroleum officer Marlin Besler, and Rosen met in Rosen's office. The check was endorsed and deposited in Rosen's trust account, and checks were drawn on that account payable to Parranto and Liberty, Q Petroleum and Liberty, and Q Petroleum, in accordance with their previous agreement on the distribution of the litigation proceeds. Liberty received Parranto's share of the proceeds and applied it to the loan.

Williams' complaint in this action, filed against Liberty, its president, all the parties to the federal suit, and their lawyers, pleaded causes of action to establish and foreclose an attorney's lien; breach of an express contract for legal services; breach of implied contract to provide legal services and unjust enrichment; fraudulent inducement of legal services; and fraudulent avoidance of legal fees. Williams also sought punitive damages on his fraud claims.

The trial court granted the motions of Rosen, Q Petroleum, Liberty, and Fesler for summary judgment on all claims except the lien claim. It subsequently dismissed this remaining claim and granted the motions of Berens, Jesson, the Oppenheimer Law Firm, and Dow for summary judgment on all counts. This appeal followed.

**ISSUES**

1. Did Williams raise a genuine issue of material fact on the existence of an express or implied contract between Williams and any of the respondents?

2. Was Williams' attorney's lien enforceable against any of the respondents?

3. Did Williams' fraud claims against the respondents present a genuine issue of material fact?

**ANALYSIS**

**I**

*Breach of Contract*

Williams asserts that Q Petroleum breached express and implied contracts for legal services and Liberty breached an implied contract for legal services. The grounds for these claims appear to be: (1) the agreement between Q Petroleum and the Parranto defendants obligated the Parranto defendants to pursue their joint claims against Dow; and (2) both Q Petroleum and Liberty benefited from Williams' provision of legal services.

Williams' assertion of an express agreement on the part of Q Petroleum was properly dismissed, since he produced no evidence of such an agreement. Without more, the fact that the Parranto defendants were to pursue the claims against Dow does not support an inference that Williams was actually retained by Q Petroleum, particularly when the retainer agreement between Williams and the Parranto defendants authorized him to pursue claims *against* Q Petroleum and referred to higher legal fees only in the event that Q Petroleum agreed to pay them.

We recognize that under *Johnson v. Blue Cross and Blue Shield of Minnesota*, 329 N.W.2d 49, 51 (Minn.1983), an agreement to pay for legal services need not be express; its existence can be inferred from the conduct of the parties (implied-in-fact agreement), or it can be implied in law when the equities of the situation result in unjust enrichment. *Id.*

Williams, however, has not presented sufficient evidence to raise a fact issue on the existence of an implied-in-fact agreement. The retainer agreement provision for extra fees if Q Petroleum agreed to pay them indicates that the parties, including Williams, understood that Q Petroleum would not be liable for fees in the absence of express agreement. Additionally, the

Notice of Association and federal court records all refer to Williams as attorney for the Parranto defendants, not Q Petroleum.

■ Similarly, the facts do not support a claim for an agreement implied in law. Williams was retained by the Parranto defendants. At all times Q Petroleum had its own attorney, William Rosen, and incurred its own separate fees and costs. We acknowledge that the issue of the scope of Rosen's retainer must be decided in favor of Williams, who asserts that he did represent Q Petroleum on the downpayment claim and that Rosen was hired solely to represent Q Petroleum in connection with Dow Chemical's counterclaim. However, Williams agreed to represent the Parranto defendants, knowing that Q Petroleum had not expressly consented to pay his fee and without any guarantee that his fees would be paid by anyone else. In these circumstances, it is not unfair to deny Williams compensation from Q Petroleum for services that he "essentially had to perform anyway in representing his client." *Johnson,* 329 N.W.2d at 52.

■ Finally, we see no reason to imply, in law, an agreement on the part of Liberty to pay Williams' attorney's fees. Liberty held a preexisting security interest in the proceeds of the lawsuit and was not otherwise involved in prosecuting that suit or selecting Williams as counsel. Williams' cited authority, *Keene v. Stattman,* 256 N.W.2d 295 (Minn.1977), which relies on the interaction between the hospital lien statute, Minn.Stat. § 514.68, and the attorney's lien statute, does not compel a different result. Liberty is not unjustly enriched by receiving the proceeds of a perfected security interest of which Williams was or could have been aware before he undertook the Parranto defendants' representation.

Because Williams failed to raise an issue of fact on his express or implied-in-fact retention by Q Petroleum, and the circumstances of this case do not require that an agreement by Q Petroleum or Liberty be implied in law, the trial court properly dismissed Williams' breach of contract claims.

## II

### *Attorney's lien claims*

Williams' claim for the establishment and enforcement of an attorney's lien against respondents is governed by Minn.Stat. § 481.13 (1984), which provides that an attorney has a lien for compensation

(1) *Upon the cause of action* from the time of the service of the summons therein, or the commencement of the proceeding, *and upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed,* from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of such lien claim, as provided in this section;

(2) *Upon a judgment,* \* \* \* the lien shall extend to the amount thereof from the time of giving notice of his claim to the judgment debtor, but this lien is subordinate to the rights existing between the parties to the action or proceeding;

\* \* \* \* \* \*

(4) \* \* \* If the lien is claimed on the client's interest in personal property involved in or affected by the action or proceeding, the notice shall be filed in the same manner as provided by law for the filing of a security interest.

Minn.Stat. § 481.13 (1984) (emphasis added).

■ The statute provides for two types of liens: liens on causes of action and liens on judgments. Although Williams filed a notice of lien on the judgment, the two types of liens are not mutually exclusive, and both sections may apply. *See Village of New Brighton v. Jamison,* 278 N.W.2d 321, 326 (Minn.1979). As the Parranto defendants' attorney, Williams is entitled, under the statute, to assert a lien on the Parranto defendants' cause of action. Cause-of-action liens ordinarily arise upon the commencement of the action; however, Williams' lien would have commenced when the notice of association was filed, because he did not represent the Parranto defend-

ants at the commencement of the action. Once formed, a lien on a cause of action exists until it is satisfied and is not extinguished by the entry of judgment on the cause of action. *Desaman v. Butler Brothers*, 114 Minn. 362, 364, 131 N.W. 463, 464 (1911).

Under the statute, an attorney is given a lien "upon the interest of his *client.*" Minn.Stat. § 481.13(1). The statute does not create an agreement to pay attorney's fees, but only imposes a lien to protect an attorney who already has such an agreement. *Johnson*, 329 N.W.2d at 53. The trial court properly concluded that Q Petroleum and Liberty were not Williams' "clients;" thus, Williams' lien did not attach to their shares of the proceeds, and his lien claim against them as "clients" was properly dismissed.

It is also clear that Williams' lien on the Parranto defendants' interest in the Dow litigation does not give him the right to claim a lien against any third party involved in the litigation. Rather, this lien would be limited to those parties who actually disbursed or received those proceeds: the Parranto defendants, Dow, and Liberty. Because none of the other parties received the proceeds of the Parranto defendants' interest, the trial court properly dismissed Williams' lien claim against them.

As against Liberty, which is a "third party" and not a client, Williams' lien on the Parranto defendants' interest in the proceeds would have become effective "from the time of filing the notice of the lien claim." Minn.Stat. § 481.13(1). Under Minn.Stat. § 481.13(4), a lien on the client's personal property "shall be filed in the same manner as provided by law for the filing of a security interest." Williams did not file notice as provided for the filing of a

security interest; the only "notice" received by Liberty was the notice of lien on judgment filed in federal court. Thus, Williams' lien never became effective against Liberty.

Even if the notice had been sufficient, Williams' lien would still be subject to Liberty's preexisting, perfected security interest in the proceeds. *Cf. LaFleur v. Schiff*, 239 Minn. 206, 210, 58 N.W.2d 320, 325 (1953) (attorney's lien may be defeated by offset occasioned by a prior lien); *Wildung v. Security Mortgage Co.*, 143 Minn. 251, 254–55, 173 N.W. 429, 430 (1919) (attorney has no greater rights against a judgment debtor than client has, and lien accordingly subject to setoff of preexisting claims).

Williams argues that Minn.Stat. § 548.13, which makes any assignment of a judgment subject to an attorney's lien, subordinates Liberty's security interest. However, that statute applies to assignments *after* a judgment has been entered. Liberty's security interest predated Williams' notice of association by two years. Minn. Stat. § 548.13 thus does not apply.[1]

Dow, on the other hand, was a defendant in the federal litigation and not a "third party" for purposes of the attorney's lien statute. Cases interpreting a 1905 statute that is, in all relevant aspects, identical to the current statute[2] state repeatedly that the payment of a claim without the plaintiff's lawyer's consent makes the paying defendant subject to the enforcement of the attorney's lien. *See, e.g., Desaman*, 114 Minn. at 364, 131 N.W. at 464 (plaintiff's attorney entitled to have settlement of judgment set aside whether or not defendant had notice of lien); *Kubu v. Kabes*, 142 Minn. 433, 172 N.W. 496 (1919) (judgment reopened and attorney's lien enforced against defendant because a

---

1. We also reject Liberty's contention that its security interest has priority by virtue of Minn. Stat. § 336.9–201. Minn.Stat. § 336.9–104(c) expressly excludes statutory liens from the scope of Article 9, and the supreme court has ruled that such exclusions preclude the application of Article 9 priority rules to determine priority conflicts between Article 9 interests and excluded interests. *See State Bank of Rose Creek v.*

*First Bank of Austin*, 320 N.W.2d 723, 725–26 (Minn.1982) (right to set-off).

2. *See Village of New Brighton v. Jamison*, 278 N.W.2d 321, 325 (Minn.1979) ("The charging lien's application to a cause of action was established by statute in 1905, and its viability under Minnesota law was not affected by the 1976 amendments * * *.")

defendant is charged with notice of an attorney's lien and can protect itself by withholding payment until the lien is withdrawn or discharged); *Balluff v. Balluff,* 169 Minn. 266, 211 N.W. 462 (1926) (defendant charged with notice of attorney's lien, which can be enforced against him regardless of settlement); *Barnes v. Verry,* 154 Minn. 252, 191 N.W. 589 (1923) (opposite party and its attorneys are required to take notice of statutory lien).

The theory behind these cases is that while the parties have a right to settle their dispute without the plaintiff's lawyer's consent, such a settlement cannot defeat the lawyer's statutory interest in the client's cause of action. The defendant is charged with notice of the existence of the statutory lien, and must therefore include that claim in the settlement. *See Krippner v. Matz,* 205 Minn. 497, 502–03, 287 N.W. 19, 22–23 (1939). That rationale has even been applied to a defendant who was told by the plaintiff that plaintiff's attorney of record was not actually his attorney:

> Ordinary prudence would suggest that defendant, before it paid any money, should consult the attorney of record and find out what rights he claimed. This was not done. Defendant relied on the statements of plaintiff, and did not retain money enough to protect itself. The result is that it, rather than plaintiff's attorneys, should bear the consequences of its lack of caution.

*Georgian v. Minneapolis & St. Louis Railroad Co.,* 131 Minn. 102, 104, 154 N.W. 962, 963 (1915).

Dow claims that Williams' lien is not effective against it because Williams filed his notice of lien after it paid the judgment. However, under the cases cited above actual or constructive notice to the *defendant* who pays a judgment is irrelevant, since the defendant is charged with knowledge of statutory lien rights. Dow's reliance on *Axel Newman Heating & Plumbing Co. v. Sauers,* 234 Minn. 140, 47 N.W.2d 769 (1951), is misplaced. In that case the party sought to be charged with the lien was a co-defendant with the attorney's client in the proceedings in which the attorney rendered his services. *Sauers* thus involved a third party to whom notice was required to be given under the statute.

The trial court apparently concluded that Williams' lien was not enforceable against any of the respondents because the Parrantos had assigned their interests in the proceeds before retaining Williams. However, the security agreement did not deprive the Parranto defendants of all interest in the proceeds: while the debtor's rights to collateral are governed by the security agreement, all of the debtor's rights are not divested. As a practical matter the debtor retains an interest in the outcome of the case because the proceeds paid pursuant to the security agreement reduce or eliminate the debt secured by those proceeds. The Parranto defendants had sufficient interest in the proceeds of the lawsuit for Williams' lien to commence at the time he started representing them, and that lien is enforceable against Dow.

### III

### *Fraud claims*

Williams asserts two fraud claims, one for "fraudulent inducement of legal services," and the other for "fraudulent avoidance of legal fees." The essence of the first claim is that the Parranto defendants, the Q Petroleum defendants, and the Liberty defendants (1) knew or should have known that Williams would not have taken the suit unless he was to be paid out of the proceeds, yet they (2) falsely told him, "by omission or commission," that he would be paid out of the proceeds and that there was no legal impediment to such payment, and (3) he relied on those representations in taking the case.

We agree with the trial court that Williams has not pleaded any specific misrepresentations by any of the defendants, and that the duly filed financing statement gave Williams constructive notice of the existence of Liberty's security interest. In the absence of special circumstances, one party to a transaction has no duty to disclose material facts to the other party. *Klein v. First Edina National Bank,* 293

Minn. 418, 421, 196 N.W.2d 619, 622 (1972). Furthermore, where the concealed fact is not peculiarly within the defendants' knowledge and is readily ascertainable, the failure to disclose that fact does not amount to fraud. *See Egan v. Thorpe Bros.*, 195 Minn. 370, 371, 263 N.W. 109, 110 (1935).

 Because Williams produced no evidence or specific allegation of any affirmative misrepresentations, the facts allegedly misrepresented were in the public record, and no special circumstances exist which would require disclosure of Liberty's security interest, the claim against Liberty and Q Petroleum for "fraudulent inducement of legal services" was properly dismissed.

 In the other fraud claim, Williams alleged that all of the defendants formed a post-judgment "conspiracy" to defeat his attorney's lien. Specifically, he alleged that by conducting secret negotiations while telling him that they would notify him before any settlement was paid and distributed, they induced him not to file his lien prior to the payment of the judgment. To note just a few of the problems with this claim: (1) Williams can prove no damages, since even if they had notified him of the settlement, he would still have had to take legal action if, as is likely, everyone had refused to pay him; (2) statements of future intent are generally not actionable unless they misrepresent present fact, *Berg v. Xerxes–Southdale Office Building Co.*, 290 N.W.2d 612, 615 (Minn.1980); and (3) Williams asserts no reliance other than that he refrained "from filing formal attorneys liens and taking other appropriate steps to collect his fee." Yet he is now doing precisely what he claims he refrained from doing, and it is doubtful that he would be in a better position had he done it sooner.

In summary, Williams failed to raise an issue of material fact on the existence of (1) a false representation of a past or existing material fact; (2) made with knowledge of the falsity of the representation; (3) with intention to induce Williams to act in reliance; (4) actions taken in reliance; or (5) resulting damages. *See Burns v. Va-*

*lene*, 298 Minn. 257, 261, 214 N.W.2d 686, 689 (1974). The claim for fraudulent inducement of legal fees was also properly dismissed.

## IV

Liberty State Bank and its president, David Fesler, request reasonable costs and attorneys' fees incurred in connection with this appeal on the ground that, as against them, Williams' claims are frivolous, unfounded, and without merit. However, we do not believe that all of Williams' claims against these defendants were so wholly without merit as to evidence bad faith. The request for costs and attorneys' fees is accordingly denied.

## DECISION

The trial court erred in granting partial summary judgment in favor of Dow on Williams' attorney's lien claim, but properly entered partial summary judgment on the other claims.

Affirmed in part, and reversed and remanded in part.