# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0055

City of Oronoco,
Respondent,

vs.

Fitzpatrick Real Estate, LLC, et al.,
Appellants,

vs.

Whitney National Bank of New Orleans, Louisiana,
Respondent.

**Filed September 8, 2015**
**Reversed and remanded**
**Rodenberg, Judge**

Olmsted County District Court
File No. 55-CV-10-6728

Frederick S. Suhler, Jr., Fred Suhler Law Office, Rochester, Minnesota (for respondent City of Oronoco)

Daniel J. Heuel, O'Brien & Wolf, L.L.P., Rochester, Minnesota (for appellants)

John C. Holper, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for respondent Whitney National Bank)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

An attorney lien on a cause of action, under Minn. Stat. § 481.13, subd. 1(a)(1) (2014), is perfected as against parties and nonparties to the cause of action without notice and filing under Minn. Stat. § 481.13, subd. 2 (2014).

## O P I N I O N

**RODENBERG**, Judge

Appellants Fitzpatrick Real Estate LLC, Daniel Fitzpatrick, and Fitzpatrick Construction, Inc. (collectively, Fitzpatrick) and their attorney, O'Brien & Wolf, L.L.P. (O'Brien), challenge the district court's determination that O'Brien's cause-of-action attorney lien is inferior to the garnishment lien of Fitzpatrick creditor, Whitney National Bank of New Orleans (Whitney), because O'Brien did not file notice of its cause-of-action attorney lien. Because the attorney lien was not on a judgment and was not on particular money or property involved in the action or proceeding, the last clause of Minn. Stat. § 481.13, subd. 1(a)(2) does not apply to the lien. We therefore reverse and remand.

## FACTS

O'Brien began representing Fitzpatrick in this action on October 22, 2010, after the city of Oronoco (Oronoco) had sued Fitzpatrick.[1] Fitzpatrick prevailed against Oronoco, obtained a money judgment for damages, and Oronoco appealed to this court.

---

[1] O'Brien continues to represent Fitzpatrick on appeal.

We affirmed the district court's order and judgment in favor of Fitzpatrick.[2] *See City of Oronoco v. Fitzpatrick Real Estate, LLC*, No. A13-1741 (Minn. App. Mar. 31, 2014), *review denied* (Minn. June 17, 2014). After the supreme court denied further review, and on June 30, 2014, we awarded costs to Fitzpatrick.

Whitney has a 2008 judgment against Fitzpatrick for $273,189.69 arising from unrelated litigation in Florida. That judgment was docketed in Minnesota on May 21, 2009. On June 18, 2014, Whitney served Oronoco with a garnishment summons and disclosure form seeking to garnish the funds owed by Oronoco to Fitzpatrick. Whitney sent a garnishment notice to Fitzpatrick at several addresses, but the addresses were not current. Whitney then contacted O'Brien and obtained Fitzpatrick's current and correct address. It then sent the garnishment notice to O'Brien and to Fitzpatrick.

On June 30, 2014, appellant O'Brien asserted an attorney lien "on the cause of action . . . and in the judgment" against Oronoco. O'Brien also recorded a UCC Financing Statement with the Minnesota Secretary of State on July 2, 2014.

On July 3, 2014, Oronoco completed the garnishment disclosure and disclosed to Whitney the amount due on the judgment to Fitzpatrick, $144,123.64.[3] Because of the competing claims to the money owed by Oronoco to Fitzpatrick, and on July 29, 2014,

---

[2] The district court's final judgment was entered on September 12, 2013. Oronoco appealed on September 16, 2013. On October 15, 2013 the parties agreed to stay enforcement of the judgment pending appeal.

[3] This amount included the judgment and pre-judgment interest as of the date of the disclosure.

3

Oronoco deposited with the district court $149,113.24,[4] the total amount owed to Fitzpatrick with interest.

On July 15, 2014, O'Brien sought a district court determination concerning the amount and priority of the claims asserted by Whitney and O'Brien. The district court, by order dated December 2, 2014, determined the amount of O'Brien's attorney lien ($37,297.77) and the amount of the Whitney garnishment lien ($144,123.64), and concluded that Whitney's garnishment lien was superior to O'Brien's attorney lien.

Observing that O'Brien had failed to specify whether it was asserting a cause-of-action lien or a judgment lien, the district court determined that Whitney was a third party to the Minnesota litigation and, pursuant to the relevant statutes, "to the extent [O'Brien] asserts a judgment lien, such lien did not attach until the law firm served a Notice of Attorney Lien on [Oronoco] on June 30, 2014." The district court also concluded that any cause-of-action lien asserted by O'Brien was perfected when the UCC Financing Statement was filed on July 2, 2014. The district court concluded that these triggering events both occurred after Whitney perfected its garnishment lien on June 18, 2014. Therefore, the district court concluded that the Whitney garnishment was superior to the O'Brien lien, and it awarded $144,123.64 of the judgment to Whitney and the remaining $5,084.79 to O'Brien in partial satisfaction of its attorney lien.

This appeal followed.

---

[4] This amount includes the post-judgment interest through July 29, 2014.

**ISSUES**

Is a cause-of-action attorney lien under Minn. Stat. § 481.13, subd. 1(a)(1), superior to a garnishment lien perfected after the attorney first appears in the matter, without the attorney filing notice of the attorney lien claim under Minn. Stat. § 481.13, subd. 2?

**ANALYSIS**

An attorney lien prevents a client from benefiting from an attorney's services without paying for them. *Dorsey & Whitney LLP, v. Grossman*, 749 N.W.2d 409, 420 (Minn. App. 2008). "An attorney lien traces its origins to common law, but the Minnesota legislature has long since preempted this field and has substituted statutory procedures." *Id.* (quotation omitted); *see also* Minn. Stat. § 481.13 (2014)[5] (attorney-lien statute); *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Products, Inc.*, 295 N.W.2d 514, 516 (Minn. 1980) ("Although the attorney's charging lien existed at common law and at equity, it is now wholly governed by statute."); *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 920 (Minn. App. 2008) ("Attorney liens are governed by operation of statute."), *review denied* (Minn. Jan. 20, 2009).

"Interpretation of the attorney-lien statute presents a question of law, which we review de novo." *Grossman*, 749 N.W.2d at 420. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "A statute should be interpreted, whenever possible, to give effect

---

[5] We use the most recent version of the statute, which has not been amended since this case commenced.

to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quoting *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999)). "Generally, statutes in derogation of the common law are to be strictly construed." *Do v. Am. Family Mut. Ins. Co.*, 779 N.W.2d 853, 858 (Minn. 2010) (quotation omitted). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous." *Schroedl*, 616 N.W.2d at 277. A statute is ambiguous if it "is subject to more than one reasonable interpretation." *Id.* We read and construe statutes "as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.*

Subdivision 1 of the attorney-lien statute describes the types of liens that may be claimed by an attorney. Under subdivision 1(a)

> [a]n attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the summons in the action, or the commencement of the proceeding, and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of the lien claim, as provided in this section.

Minn. Stat. § 481.13, subd. 1(a). Under subdivision 1(b)

> [a]n attorney has a lien for compensation upon a judgment, whether there is a special express or implied agreement as to compensation, or whether a lien is claimed for the reasonable value of the services. The lien extends to the amount of the judgment from the time of giving notice of the claim to the judgment debtor. The lien under this paragraph is

6

subordinate to the rights existing between the parties to the action or proceeding.

Minn. Stat. § 481.13, subd. 1(b).

Our caselaw has discussed two types of statutory attorney liens: a cause-of-action lien created by subdivision 1(a), and a judgment lien created by subdivision 1(b). *Williams v. Dow Chem. Co.*, 415 N.W.2d 20, 25 (Minn. App. 1987). But the statute actually recognizes three types of liens:

- a cause-of-action lien under subdivision 1(a)(1);
- "a lien upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed" (property lien), under subdivision 1(a)(2); and
- a judgment lien under subdivision 1(b).[6]

These liens are not mutually exclusive. *Williams*, 415 N.W.2d at 25. Our focus in this appeal is on the liens under subdivision 1(a).

Cause-of-action liens governed by subdivision 1(a)(1) attach "from the time of the service of the summons in the action, or the commencement of the proceeding." Minn. Stat. § 481.13, subd. 1(a). When an attorney begins representation after the action commences, the attorney has a lien from "when the notice of association was filed." *Williams*, 415 N.W.2d at 25-26. The cause-of-action lien "exists until it is satisfied and is not extinguished by the entry of judgment on the cause of action." *Williams*, 415 N.W.2d at 26 (citing *Desaman v. Butler Bros.*, 114 Minn. 362, 364, 131 N.W.463, 464 (1911)).

---

[6] Although subdivision 1(a) has always recognized two separate types of liens, in 2002, the legislature amended the statute to create subdivisions 1(a)(1) and 1(a)(2), which clarified the distinction between the two types of liens. 2002 Minn. Laws ch. 403, § 2, at 1708. The *Williams* case was decided before this amendment.

7

Property liens provided for in subdivision 1(a)(2) also attach "from the time of the service of the summons of the action, or the commencement of the proceeding," but with one important caveat. Property liens attach "as against third parties" only "from the time of filing of the notice of the lien claim." *Id.*

Here, under the plain language of the statute, O'Brien has a cause-of-action lien against Fitzpatrick's cause of action that attached at the time that O'Brien noticed its representation, and the attorney lien takes priority over Whitney's subsequently perfected garnishment lien. Oronoco commenced the action on August 24, 2010, and O'Brien first appeared on October 22, 2010. Therefore, O'Brien's cause-of-action attorney lien, by operation of statute, attached on October 22, 2010. Whitney's garnishment lien, on the other hand, did not attach until June 18, 2014, upon service of the garnishment summons. O'Brien's lien therefore takes priority.

Whitney contends, and the district court concluded, that the clause at the end of subdivision 1(a)—"and, as against third parties, from the time of filing the notice of the lien claim, as provided in this section" (the third-party clause)—modifies both subdivisions 1(a)(1) and 1(a)(2). *See* Minn. Stat. § 481.13, subd. 1(a)(2). We disagree. As discussed, subdivision 1(a) provides for two separate, but not mutually exclusive, liens for compensation, and defines the interest to which each lien attaches: the cause of action itself in subdivision 1(a)(1), and the "interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed" in subdivision 1(a)(2). Both subdivisions provide that the attorney "has a lien for compensation" from the time of commencement of the proceeding, but

8

subdivision 1(a)(2) adds the additional requirement that, "as against third parties," the lien exists "from the time of filing the notice of the lien claim." *Id.*

If the third-party clause applied to subdivision 1(a)(1), it would follow that the phrase providing that the lien attaches at "the commencement of the action or proceeding," which is included in both subdivisions, would also need to be read into subdivision 1(a)(1). But this direction is already provided in subdivision 1(a)(1). Interpreting the third-party clause to modify clause one would render the phrase "from the commencement of the action or proceeding" in clause one superfluous. This interpretation is counter to Minn. Stat. § 645.16 (2014), providing that "[e]very law shall be construed, if possible, to give effect to all its provisions." *See also Schroedl*, 616 N.W.2d at 277 (stating that "no word, phrase, or sentence should be deemed superfluous, void, or insignificant" (quotation omitted)). We therefore conclude that the clause "and, as against third parties, from the time of filing the notice of the lien claim, as provided in this section," does not modify subdivision 1(a)(1).

In addition to being required by our statutory rules of construction, this reading of the statute also makes sense. The first clause of Minn. Stat. § 481.13, subd. 1(a), pertains to an attorney lien on a cause of action, while the second clause pertains to a lien on a client's interest in specific money or property involved in a proceeding. There is good reason for the legislature to have added a third-party notice requirement for attorney liens that would encumber specific money or property involved in litigation. Where the litigation concerns an automobile encumbered by a security interest, for example, the attorney lien would arise under Minn. Stat. § 481.13, subd. 1(a)(2), and the attorney lien

9

would for good reason be junior to a third party with an earlier-perfected security interest. *See Ryan & VanDerHeyden v. Bagne*, 429 N.W.2d 307, 308-09 (Minn. App. 1988) (applying the predecessor to the current statute so as to prioritize the security interest of a bank in a leasehold interest of property over the attorney lien on that interest arising from the attorney's representation of the owner of the leasehold interest in condemnation litigation), *review dismissed* (Minn. Jan. 11, 1989).

Our interpretation of the statute is also consistent with the caselaw, which has held that an attorney lien is generally "superior to the rights of plaintiff's judgment creditors." *LaFleur v. Schiff*, 239 Minn. 206, 209, 58 N.W.2d 320, 323 (1953). In *LaFleur*, one Scarsdale had obtained a judgment against the plaintiff. 239 Minn. at 207, 58 N.W.2d at 321. The plaintiff was suing a defendant in an unrelated case for money loaned to that defendant. *Id.* at 207, 58 N.W.2d at 321-22. After commencement of that action by plaintiff and before trial, Scarsdale assigned to the defendant his interest in his judgment against the plaintiff. *Id.* at 207, 58 N.W.2d at 322. When the plaintiff prevailed in his suit against the defendant, the plaintiff's attorney asserted an attorney lien, and the defendant moved the municipal court to offset his liability to plaintiff with the Scarsdale judgment that he had been assigned. *Id.* On appeal, the supreme court concluded that the defendant "could acquire no greater right than his assignor [Scarsdale] had" and that defendant's interest was therefore inferior to that of plaintiff's attorney because the defendant's interest attached after the attorney lien attached. *Id.* at 209-10, 58 N.W.2d at 323.

Similarly here, O'Brien's cause-of-action attorney lien attached when O'Brien began representing Fitzpatrick in October 2010, which was long before Whitney gained an interest in Fitzpatrick's judgment against Oronoco by way of its garnishment lien in June 2014. The attorney-lien statute provides that the attorney lien on a cause of action attaches "upon the cause of action from the time of the service of the summons in the action, or the commencement of the proceeding." Minn. Stat. § 481.13, subd. 1(a)(1); *see also Williams*, 415 N.W.2d at 25-26 (stating that the cause-of-action lien attaches when notice of representation is filed if the attorney does not represent the client at the commencement of the action). If Fitzpatrick had assigned his interest in the cause of action to Whitney after O'Brien's representation of him had commenced, the assignment would have been subject to O'Brien's attorney lien on that cause of action. After all, liability of Oronoco to Fitzpatrick exists because of the efforts of O'Brien. It would make little sense to allow Fitzpatrick to discharge an unrelated debt with the proceeds of O'Brien's successful handling of his cause of action.[7] The only sensible way to read Minn. Stat. § 481.13, subd. 1(a), is to consider the words "from the time of filing the notice of the lien claim, as provided in this section" as only applying to subdivision 1(a)(2).

---

[7] *LaFleur* arose from an assignment and not from a garnishment lien. But if we were to hold that a garnishment lien supersedes an attorney cause-of-action lien, a client could avoid that attorney lien by confessing judgment to his general creditor instead of making an assignment. This would be an absurd result that the legislature could not have intended. *See* Minn. Stat. § 645.17 (2014) (stating that in ascertaining legislative intent, the legislature does not intend an absurd or unreasonable result).

In *Thomas B. Olson*, construing Minn. Stat. § 481.13, subd. 1(a)(2), in a dispute arising from competing attorney-lien claims "in a client's personal property," we held that perfection of an attorney lien "is accomplished by filing notice 'in the same manner as provided by law for the filing of a security interest.'" *Thomas B. Olson*, 756 N.W.2d at 921 (quoting Minn. Stat. § 481.13, subd. 2). Olson had sued the competing law firms for breach of contract and conversion, as a result of a dispute over attorney fees. *Id.* at 913. In *Thomas B. Olson* we did not analyze whether the last clause of subdivision 1(a)(2) modifies both the cause-of-action lien under subdivision 1(a)(1) and the lien on "money or property involved in or affected by the action" under subdivision 1(a)(2). *See* Minn. Stat. § 481.13, subd. 1(a). We had no occasion to address that precise question in *Thomas B. Olson*.

Based on the plain language of Minn. Stat. § 481.13, subd. 1(a), we hold that the district court erred in granting priority to Whitney's garnishment lien.

## DECISION

A cause-of-action attorney lien under Minn. Stat. § 481.13, subd. 1(a)(1), attaches from the date of the service of summons or commencement of the proceeding, and does not require notice to be perfected. O'Brien's cause-of-action attorney lien attached no later than October 22, 2010 when O'Brien began representing Fitzpatrick and made its first appearance in this matter. Because the attorney lien attached before Whitney perfected its garnishment lien, the district court erred in concluding that the Whitney garnishment lien was superior to the O'Brien attorney lien. We reverse and remand to

12

the district court to enter judgment consistent with the priority of the O'Brien attorney lien.

**Reversed and remanded.**