v.

**MINNESOTA DEPARTMENT OF HUMAN SERVICES,**
Appellant.

No. A11–1831.

Court of Appeals of Minnesota.

July 2, 2012.

Julie H. Firestone, Briggs & Morgan, P.A., Minneapolis, MN, for respondent.

Lori Swanson, Attorney General, Patricia A. Sonnenberg, Assistant Attorney General, St. Paul, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; HUDSON, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Appellant Minnesota Department of Human Services (DHS) challenges the district court's reversal of its determination to reduce respondent's personal-care-assistance services in response to legislative changes to Minnesota's medical-assistance program. DHS argues that the district court erred in interpreting the personal-care-assistance statute by concluding that respondent A.A.A. is dependent in mobility, a critical activity of daily living. Because we conclude that respondent is not dependent in mobility under the statute, we reverse.

## FACTS

Respondent is a child with autism who receives personal-care assistance (PCA) under the state's medical-assistance program. In 2009, the Minnesota Legislature changed the method used by DHS to calculate the amount of time a qualified individual is entitled to receive PCA. *See* 2009 Minnesota Laws, ch. 79, art. 8, §§ 85–86, at 935 (renumbering and repealing relevant statutes); 20–21, at 856–57; 28, at 875–78; 31, at 879–900 (enacting relevant current statutes).

The new method requires calculation of a "home care rating" and identifies three criteria to determine the home care rating: (1) the individual's dependent activities of daily living (ADLs); (2) the individual's complex health-related needs; and (3) the individual's Level I behaviors (behaviors). Minn.Stat. § 256B.0652, subd. 6(b) (2010). An individual may be allotted PCA time in addition to the base allotment resulting from the calculated home care rating. *Id.*, subd. 6(c) (2010).

Respondent was initially assessed by a public health nurse, who determined his home care rating was "U," a rating that applies to individuals who have four to six ADL dependencies and one or more complex health-related needs. The base amount of PCA time for a "U" rating is 210 minutes.

The first criteria, dependent ADLs, are daily living activities for which "a person requires assistance to begin and complete" or the person needs "cuing and constant supervision to complete the task" or the person needs "hands-on assistance to complete the task." Minn.Stat. § 256B.0659, subds.1(f), 4(b)(1)(i-ii) (2010). There are eight ADLs. *Id.*, subd. 2(b)(1–8) (2010). Four of the eight ADLs, including "mobili-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ty," are classified as "critical." *Id.*, subd. 1(e) (2010). An individual is allotted an additional 30 minutes per day of PCA for every critical ADL in which they are dependent. Minn.Stat. § 256B.0652, subd. 6(c)(1).

The second criteria, complex health-related needs, are categories of interventions ordered by a physician. Minn.Stat. § 256B.0659, subd. 4(c)(1–8) (2010). There are eight categories of complex health-related needs, including a general-need category for "other congenital or acquired diseases creating a need for significantly increased direct hands-on assistance and interventions in *six to eight [ADLs]*." *Id.*, subd. 4(c)(8) (emphasis added). An individual is allotted an additional 30 minutes per day of PCA for every identified complex health-related need. Minn.Stat. § 256B.0652, subd. 6(c)(2).

The third criteria, behaviors, are specific behaviors for which an individual requires assistance at least *four times a week*. Minn.Stat. § 256B.0659, subd. 4(d) (2010). There are three categories of behaviors. *Id.*, subd. 4(d)(1–3). An individual is allotted an additional 30 minutes per day of PCA for every present behavior. Minn. Stat. § 256B.0652, subd. 6(c)(3).

Following the 2009 legislative changes, DHS developed guidelines for use by public health nurses conducting assessments. The public health nurse found that respondent was dependent in five ADLs, including two critical ADLs, but did not find respondent to be dependent in the critical ADL of "mobility." For an individual older than two years of age, the guidelines define a dependency in mobility as an inability to ambulate without the assistance of a device. The public health nurse found that respondent had one complex health-related need due to a seizure disorder. The public health nurse found that respondent exhibited all three behaviors. Combining the base allotment with two identi-

fied critical ADLs, one complex health-related need, and the presence of three behaviors, the public health nurse recommended 390 minutes of PCA daily ($210 + 60 + 30 + 90 = 390$).

Respondent appealed to DHS and, following a hearing, an administrative law judge (ALJ) found that respondent was dependent in mobility, and thus, was entitled to an additional 30 minutes of PCA for the critical ADL. The ALJ also found that respondent had six ADLs and a "congenital disease that clearly creates a need for significantly increased hands-on assistance," and thus, was entitled to an additional 30 minutes of PCA for the additional complex health-related need.

Regarding respondent's mobility issues, the ALJ found:

> [Respondent] is constantly active and makes frequent attempts [to] leave a room or wander away from his care providers when in public. Because [respondent] does not respond to verbal commands, when he is walking, direct physical contact must continuously be maintained to cue and constantly maintain supervision of [respondent]. Approximately one month prior to the fair hearing, the police had to be called when [respondent] managed to evade his school driver and somehow made his way to downtown Minneapolis; he was missing for two hours, but was fortunately not injured, although he was spotted by a neighbor about a mile from where he had fled in a street paying no heed to traffic. [Respondent] also frequently has to be physically restrained to keep him from engaging in dangerous or harmful actions, such as touching a hot stove.

Based on the finding that respondent had a dependency in mobility and an additional complex-health related need, the ALJ concluded that respondent was entitled to an

additional 60 minutes of PCA daily, for a total of 450 minutes, and recommended that DHS's determination of 390 minutes be reversed.

A chief ALJ subsequently issued an amended order, rejecting the ALJ's recommendation. The chief ALJ concluded that respondent was entitled to 390 minutes of PCA, based on the finding that respondent was not dependent in mobility and, thus, did not have six ADLs or an additional complex health-related need. Regarding respondent's mobility issues, the chief ALJ found:

> The [public health nurse] was correct in finding that [respondent] does not have a dependency in mobility because he is physically able to walk. The fact that he needs to be supervised so that he does not harm himself while out walking in public, for example, is properly accounted for by the daily PCA time allotted for his behaviors.

Respondent appealed to the district court. The district court reversed the determination of the chief ALJ, concluding that respondent is dependent in mobility, has an additional complex health-related need, and thus, is entitled to 450 minutes of PCA. Regarding respondent's mobility issues, the district court found:

> [Respondent] has to be physically moved away from dangerous situations, and will try to run away if someone is not holding his hand
>
> [Respondent] ran away 20 times over a two-month period.... [respondent] ran away from the bus driver who had transported him home from school. He was spotted an hour later by a relative in downtown Minneapolis one mile from his home. He was in danger because he was not watching for cars.

## ISSUE

Did the district court err in concluding that an individual could be dependent in mobility under the personal-care-assistance statute when the individual is capable of running and walking without assistance?

## ANALYSIS

"An agency's decision is accorded a presumption of correctness." *St. Otto's Home v. Minnesota Dept. of Human Servs.*, 437 N.W.2d 35, 39 (Minn.1989) (quotation omitted). The court may reverse or modify the agency's decision only

> if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) arbitrary or capricious.

Minn.Stat. § 14.69 (2010).

"When a decision turns on the meaning of words in a statute or regulation, a legal question is presented. In considering such questions of law, reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home*, 437 N.W.2d at 39–40 (citations omitted).

Our objective when interpreting statutory provisions is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). "When interpreting a statute, we first [determine] whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). An ambiguity exists only when a statute's "language is subject to

more than one reasonable interpretation." *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007). If the language of the statute is clear and free from ambiguity, courts apply its plain meaning. *Id.; see also* Minn.Stat. § 645.16 (stating that when the words of a statute are clear, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit").

■■ In determining whether a statute's meaning is unambiguous, courts are to construe words and phrases according to their plain and ordinary meaning. Minn.Stat. § 645.08(1) (2010); *Schroedl,* 616 N.W.2d at 277. Whenever possible, a statute should be interpreted to give effect to all of its provisions; "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn. 1999). We review a statute's content to discern meaning in the full context of the act or provision and consider sections of a statute that relate to the same subject matter. *See Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 339 (Minn.1984) (considering several sections of an ordinance in defining term at issue); *Christensen v. State, Dep't of Conservation, Game & Fish,* 285 Minn. 493, 499–500, 175 N.W.2d 433, 437 (1970) (considering act as a whole and relevant statutory provisions in construing statute at issue).

The ADL of mobility "includ[es] assistance with ambulation, including use of a wheelchair." Minn.Stat. § 256B.0659, subd. 2(b)(6). An individual is dependent in an ADL if he "requires assistance to begin and complete" *the task* or the person needs "cuing and constant supervision to complete *the task*" or the person needs "hands-on assistance to complete *the task.*" *Id.,* subds.1(f), 4(b)(1)(i-ii) (emphasis added).

The plain language of the statute initially requires an identification of "the task" within the context of the ADL of mobility. The statute sets forth a category titled "activities of daily living," and identifies, primarily among those activities, verbs readily identifiable as tasks, for example, dressing, grooming, bathing, and eating. *Id.,* subd. 2(b). Considering that "mobility" is included as an "activity of daily living" and "include[es] assistance with ambulation, including use of a wheelchair," we conclude that the statute unambiguously identified the task, within the context of the ADL of mobility, as "moving" (from place to place). *See also The American Heritage College Dictionary* 892 (4th ed.2007) (mobility means the "quality or state of being mobile").

Accordingly, an individual is dependent in mobility if he "requires assistance to begin and complete" the task of moving (from place to place), if he requires "cuing and constant supervision" to complete the task of moving, or if he requires "hands-on assistance" to complete the task of moving. Respondent is able to begin and complete moving from place to place without assistance, and he does not need cuing and constant supervision or hands-on assistance to do so; thus respondent is not dependent in the ADL of mobility.

## DECISION

Because respondent is able to begin and complete moving from place to place without assistance, and without needing cuing and constant supervision or hands-on assistance, the district court erred in determining that respondent is dependent in the ADL of mobility. Respondent is entitled to 390 minutes of daily PCA.

**Reversed.**